IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## BLOUNT MEMORIAL HOSPITAL v. ERIC GLASGOW

Appeal from the Chancery Court for Sevier County
No. 16-5-159      Telford E. Forgety, Jr., Chancellor

_____

No. E2019-00776-COA-R3-CV

_____

This appeal arises from a hospital's action against a patient to recover payment for medical services. After a bench trial, the court determined there was not an enforceable contract between the parties, but the hospital was entitled to recover the value of its services under a quantum meruit theory and ruled that the charges billed to the patient represented the actual value of the hospital's services. The court based its determination on the testimony of the hospital's witness that, because the rates that a hospital could charge were set by Medicare, the amount charged to the patient was comparable to what other hospitals would charge for the same or similar services. The patient appeals and asks this court to consider whether the hospital proved by a preponderance of the evidence that the amount it charged for medical services represented the actual value of those services. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Bryan L. Capps, Knoxville, Tennessee, for the appellant, Eric Glasgow.

Joel A. Vallejo, Nashville, Tennessee, for the appellee, Blount Memorial Hospital.

**MEMORANDUM OPINION[1]**

_____

[1] Tenn. Ct. App. R. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On May 9, 2016, Blount Memorial Hospital ("Blount Memorial") filed a Complaint on Sworn Account against Eric Glasgow ("Mr. Glasgow"), seeking payment for medical services that Mr. Glasgow received on December 29, 2013, and on January 3, 2014, in the amount of $31,595.55. Mr. Glasgow filed an answer on April 24, 2017, and the case proceeded to trial on October 31, 2017, in Sevier County Chancery Court.

At trial, Stacy Hawkins testified that she had been employed as a financial counselor for Blount Memorial for 14 years and was primarily responsible for patient billing. She identified two itemized bills for medical services that Blount Memorial provided to Mr. Glasgow on December 29, 2013, and January 3, 2014, for $20,587.90 and $11,007.65 respectively, and the itemized bills were entered into evidence. Additionally, Ms. Hawkins identified two Consent/Release forms signed by Mr. Glasgow, upon admission to Blount Memorial, one in December 2013 and the other in January 2014, agreeing that he was "liable for the payment of the . . . account in accordance with [Blount Memorial's] rates and terms," and those forms were also admitted into evidence.

Ms. Hawkins explained that, initially, Blount Memorial submitted the claims to United Healthcare ("UHC") because Mr. Glasgow listed UHC as his health insurance provider. Ms. Hawkins testified that UHC refused to pay any portion of the claims because Mr. Glasgow failed to update his "coordination of benefits" information. She further testified that, when Blount Memorial informed Mr. Glasgow of the issue with UHC, he was asked to update his information with UHC. Instead of doing as requested, Mr. Glasgow asked Blount Memorial to submit the claims to the Department of Veterans' Affairs ("the VA"). Ms. Hawkins testified that Blount Memorial complied with his request and submitted the claims to the VA; however, the VA did not pay the claims because the claims were not military-related, and it was designated as Mr. Glasgow's secondary insurance. Because UHC and the VA refused to pay the claims, Ms. Hawkins submitted the bills to Mr. Glasgow for payment without the benefit of contractual discounts that would have applied pursuant to Blount Memorial's agreements with the health insurance company and the VA.

When questioned about the reasonableness of Blount Memorial's charges as billed to Mr. Glasgow and whether those charges were customary in the industry, Ms. Hawkins testified that any area hospital who accepted Medicare patients would have similar charges to Blount Memorial because Medicare determined the prices that those hospitals could charge for their services. Mr. Glasgow presented no evidence to challenge the reasonableness of the charges he was asked to pay.

At the conclusion of the hearing, the trial court delivered its ruling from the bench, which was also incorporated into a written order entered on April 5, 2019. Relying on the decision in *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191 (Tenn. 2001), the trial court determined that the Consent/Release forms Blount Memorial produced as

evidence of a contract between the parties were too indefinite to constitute an enforceable contract for medical services.[2] However, the court found that Blount Memorial was entitled to recover the reasonable value of its services under a theory of quantum meruit. In determining the reasonable value of Blount Memorial's services, the court relied on the testimony of Ms. Hawkins that that rates for the services rendered to Mr. Glasgow were set by Medicare. The court reasoned that $31,595.55 was a customary charge for the services because "the amount that was billed in this case was the amount that was and is set by Medicare and . . . [it] is the same amount as any hospital that accepts Medicare patients and gets paid by Medicare[.]"

Mr. Glasgow appealed.

## ANALYSIS

The sole issue on appeal is whether Blount Memorial proved by a preponderance of the evidence that the amount it charged for medical services represented the actual and reasonable value of those services under a quantum meruit theory.

Mr. Glasgow argues that Ms. Hawkins' testimony was incompetent and insufficient to prove that the charges billed to him were actual and reasonable because (1) she was not responsible for setting the prices that Blount Memorial charged, and therefore, she had no direct knowledge of the actual value of the services provided, (2) she did not know if Blount Memorial's rates were customary because she did not speak directly with other area hospitals to determine what they charged for similar services, and (3) she did not know the contractual rates that UHC or any other health insurance company paid for the services rendered to Mr. Glasgow, which the hospital regularly accepted as sufficient payment for its services. For its part, Blount Memorial argues that Ms. Hawkins' 14 years of experience in Blount Memorial's financial services department, her familiarity with Blount Memorial's billing practices, and her uncontroverted testimony that Blount Memorial's charges were reasonable and customary among the hospitals in the community was sufficient to prove that the charges billed to Mr. Glasgow reflected the actual and reasonable value of the medical services provided.

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing

---

[2] In *Doe*, the Court determined that the contract for payment of medical services was too indefinite to enforce because it "did not provide any reference to a document, transaction or other extrinsic facts by which the price could be determined and the meaning of the term 'charge' made clear." *Id.* at 197.

Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

"Courts will not award quantum meruit recoveries without some proof of the reasonable value of the goods or services." *Doe*, 46 S.W.3d at 198. Such a determination is not necessarily based on the contract price. *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). It may be based "on the customs and practices prevailing in the same sort of business in which the services would normally be provided." *In re Estate of Marks*, 187 S.W.3d 21, 32 (Tenn. Ct. App. 2005) (citations omitted); *see also Doe*, 46 S.W.3d at 198.

As our Supreme Court held in *Doe*, the reasonable value of medical services should be determined "by considering the hospital's internal factors as well as the similar charges of other hospitals in the community." *Doe*, 46 S.W.3d at 198. Relying on a Missouri Court of Appeals decision, wherein that court determined that the testimony of the hospital's financial representative that she was familiar with the customary charges in the medical industry and that the hospital's charges for the services were reasonable and customary, the Court determined that such evidence was "sufficient to make [a] prima facie case for the reasonable value of the services rendered."[3] *Doe*, 46 S.W.3d at 198 (quoting *Heartland Health System, Inc. v. Chamberlin,* 871 S.W.2d 8, 11 (Mo. Ct. App. 1993)).

Here, Ms. Hawkins testified that Mr. Glasgow was billed for the full amount of Blount Memorial's services, an amount Blount Memorial considered to be the reasonable value of those services. That said, we recognize that "the full billed charges reflect what the provider unilaterally says its services are worth," which is not necessarily determinative of the actual value of the services. *Children's Hosp. Cent. California v. Blue Cross of California*, 226 Cal. App. 4th 1260, 1275 (2014). However, in addition to testifying that the amount charged to Mr. Glasgow was the reasonable and actual value of the services he received, Ms. Hawkins testified that the amount Blount Memorial charged for its services to Mr. Glasgow was comparable to what other area hospitals charged for similar services. More specifically, she testified:

> A. . . . I do know that [the rates] are set by Medicare, that Medicare governs all of our rates, and that our rates are compatible to the other area hospitals.

---

[3] "We find that the foregoing standards are appropriate for use in Tennessee in cases in which there is no valid, enforceable contract between a hospital and its patient. We adopt these standards for determining the 'reasonable value' of the medical goods and services provided by the hospital to the patient in such cases." *Doe,* 46 S.W.3d at 199.

Q. How do you know the rates are compatible to other area hospitals? That was going to be my next question.

A. Because that's part of what I've learned in--in fourteen years. I mean, it's just -- you know, our charges are compatible. If they weren't, then Medicare would not allow us to charge what we charge for every item that we charge for.

Q. So it's your testimony that the gross billed amount that you send to Mr. Glasgow or any patient for a billable procedure, that gross billed amount is based on what Medicare tells you to charge?

A. They -- allows us to charge, yes.

Q. Maximum allowed to charge?

A. Yes.

Q. Okay. Do you know where these bills fall on the continuum with Medicare for maximum allowable? Is it the maximum or is it ten percent less?

A. I would not know, sir.

Q. Okay. Now -- but you say that you know they are comparable in the community with other hospitals?

A. Yes.

Pursuant to the reasoning set forth in *Doe*, it was not necessary that Ms. Hawkins have experience in setting the prices for Blount Memorial's services in order to provide competent testimony regarding what was reasonable and customary. *See Doe*, 46 S.W.3d at 198. We find that Ms. Hawkins' 14 years of experience working as a financial counselor in Blount Memorial's billing department enabled her to testify competently about Blount Memorial's contract with Medicare and its effect on Blount Memorial's billing practices, as well as its general effect on the billing practices of other hospitals in the area.

Ms. Hawkins' testimony, which was not contradicted, established that Blount Memorial's charges for its medical services were comparable to all hospitals in the area that accepted Medicare patients. Moreover, Ms. Hawkins's testimony—that being the testimony of a hospital representative who is familiar with what is reasonable and customary—is "sufficient to make [a] prima facie case for the reasonable value of the services rendered." *See id.* (quoting *Heartland Health System, Inc.,* 871 S.W.2d at 11).

Because Blount Memorial established a prima facie case that the charges for which Mr. Glasgow was billed were reasonable for the services rendered, it was incumbent upon Mr. Glasgow to present rebuttal evidence to challenge the reasonableness of the charges. *See Frame v. Davidson Transit Org.*, 194 S.W.3d 429, 435 (Tenn. Ct. App. 2005) ("Once the plaintiff presents a prima facie case, the burden then shifts. . . .") Mr. Glasgow presented no such evidence.

For these reasons, we find that the evidence preponderates in favor of the trial court's determination that Blount Memorial's charges for the services rendered to Mr. Glasgow reflected the actual value of the goods and services it provided. Accordingly, we affirm the trial court's decision.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Eric Glasgow.

_____
FRANK G. CLEMENT JR., P.J., M.S.